The deal arises from a settlement agreement by which Mr. Reeping retired for medical reasons from the Postal Service. Parties agreed not to disparage each other. Mr. Reeping quickly became re-employed with FedEx, who apparently actually hauled the U.S. mail. As a consequence, Mr. Reeping had to apply for, or actually received, federal security clearance, had no problem for a couple of years. But then in 2005, a letter was faxed from the Postal Service to FedEx saying that Mr. Reeping had been denied a clearance that year because he had been investigated for embezzlement while a Toastmaster. As a consequence, he was fired. I invoke... That report was actually in the Inspection Service's records, right? Actually, Your Honor, the... It wasn't at least in the personnel folder, right? The report with regard to the embezzlement proceeding was indeed in the Inspector General's file. That's what was disclosed. To what extent does the paragraph 5 of the settlement here deal with the official personnel folder than a limitation which was not violated by the Postal Service here? Well, actually, Your Honor, the ALJ agreed with you, and wisely or unwisely, I haven't chosen that as the focus of my attack on appeal. Our beef is really with paragraph 6, which prohibits disparagement. Of course, the underlying rationale, Your Honor, was to avoid chilling Mr. Reeping's reemployment prospects, which, alas, is precisely what happened. And the ALJ indeed found, as a matter of fact, that the Postal Service had violated paragraph 6 by faxing this letter in which the Postal Service asserted that he had been investigated for embezzlement. Is there any link between the paragraph 5 and 6 so that the disparagement is linked to the personnel folder material? The personnel file material was to be purged. Apparently, and I perceive that the ALJ so The offending material was in the inspection service file, but I did one of these Freedom of Information Act requests directed to the Postal Service, and as reflected in the record in this appeal, you know, indeed, there were materials in the Postal Service file which, at least I contend, should have been purged. But the good news for Mr. Reeping was that the ALJ said clearly the disparagement prohibition was violated. The bad news was that one page later, the ALJ went on to say, but Mr. Reeping waived his right to invoke the nondisparagement And the sole basis for Judge Garrity's decision was a release which has been abundantly quoted by both sides, but the kicker is really just one sentence, and with the Court's permission, I'll read it. The release authorized, quote, the disclosure or furnishing of any relevant and necessary information or records to any duly authorized official of the United States Postal Service. Well, if the records are properly there because the expungement provision of paragraph 5 only narrowly applies to personnel records, and you waive, and your client waives the right to disclose what's there, where is your cause of action? If that were the case, Your Honor, I would be without a cause of action. Where do you come in with something to tell us? Well, what I would tell Your Honor is that the Federal Express folks are not duly authorized officials of the USPS. The release authorizes only the disclosure of information to the USPS. It doesn't authorize the USPS to release that information to anybody. And the situation is precisely like the one that's now become endemic in the practice of law, where you have clients with confidential or privileged information that's relevant to the case. So you get them to sign releases, but you don't want it disseminated. So you get everybody subject to a confidentiality order, which says that the parties who get the information can't then disseminate it elsewhere. And in this case, Mr. Riebing had an agreement by the USPS that they wouldn't disparage him, which, of course, would include disclosing to other people information critical or negative about him. And the finding of the ALJ was that this release document, which I quoted to the court, basically authorized the USPS to do that. And with all due respect to the looking-glass reversal of the obvious meaning of the release, the release said, OK, USPS, go on. I think if we can connect the two gears a little, what remedy is your client seeking here? Well, alas, again, the remedies available in an enforcement proceeding are pretty limited. As I understand the law, the Merit System Protection Board could issue what's essentially a declaratory judgment. To the extent equitable relief is available, they could do that. They can't apparently award him money damages. They can't apparently award him costs and attorney's fees. But if he wants to get money damages, he'd have to bring some sort of collateral proceeding for essentially a breach of contract. And that may indeed be the issue of this proceeding if this court were to reverse securities ruling. I guess I'm not clear. I mean, I think that in this case, your client needed a security clearance to perform the duties of these two other outside employers, correct? Well, they were requiring him to get a security clearance. Whether he would have kept his job if he'd been denied the security clearance, but it had been just, you know, he doesn't have a security clearance, no explanation given, is not clear. We don't know that. We don't know whether it was his inability to get a security clearance that cost him his job or the sentence that followed, you know, to the effect that he was under investigation for embezzlement. Obviously, I'm confined to the record of this proceeding, so I can't make any proffer to the court about what I think the case might have been. But wasn't it your obligation to have provided that evidence in the first instance? I mean, if there's a violation here, we're not contesting that the security clearance, at least the AJ bond, they had a right to have that information. The Postal Service had a right to deny a security clearance, correct? That is correct, Your Honor. So, in order for you to establish some claim here, it would have to be on the theory that they fired him, not because he didn't have a security clearance, but because of the allegedly disparaging remarks, correct? Well, if such a claim were available to me in this proceeding, I would concede Your Honor's point. Unfortunately, in an enforcement proceeding, that kind of remedy is not available to the petitioner. Basically, to get a determination in what I initially hoped would be an expeditious matter from the Merit System Protection Board that Mr. Reeping's contractual rights of the agreement had been violated, I had thought that on the basis of that declaration, Mr. Reeping could then bring a breach of contract action, move for summary judgment, and this issue would have become a judicata violation. Would you really need to re-establish the breach of contract in receiving money damages? You'd have to go either under the Little Tepper Act or the regular Tepper Act against the U.S.? I believe that's correct. So you'd still have to re-establish all of your claims of breach of contract. What relief can the MSPB or this Court give your client? Effectively, a declaratory judgment and reimbursement for his costs, Your Honor. The MSPB can declare the agency to have violated the agreement and can award Mr. Reeping his costs if he wishes to go forward and seek monetary compensation. I think Your Honor is correct. I think he has to bring a breach of contract action in some ancillary proceeding. You would have to re-register your credit card at that point. You would still need to re-establish the breach of contract under the cause of action that you would be claiming at that point. Well, actually, Your Honor, I would consent that on the sole point of liability that this Court's ruling or, if you will, the MSPB's ruling would be preclusive on that issue as to any breach of contract proceeding to follow. And then the question would be damages, and as Judge Post indicated, I'd have to establish a causation. Before you do that, you should take a look at our previous decision in Christopher Village with regard to re-establishing the breach of contract. Mr. Kockenberg, you're here because you think the problem was they released it to the FedEx, not to the Postal Service. But if you read your waiver, you release the agents and associations of the Postal Service as well. FedEx was clearly acting as an agent of the Postal Service in transporting the mail. Therefore, its activities fit fully within your release. Well, Your Honor, the release is a release of liability. The preceding language in the provision allegedly formed the basis of the waiver. The authorization was for the disclosure of information. But as to any parties not having a legitimate need for it in the discharge of the official business to the Postal Service, and the FedEx is an agent of the Postal Service here, and they needed it to give you had to have a clearance to offer it. Respectfully, Your Honor, the authorization was not to release the information to those entities. The release was to authorize specifically the provision of information, quote, to duly authorized officials of the United States Postal Service. The language, Your Honor, as quoted is a little further down in the document. It's a provision that actually is supposed to give assurance to Mr. Riebing. It's to the effect that the authorization is executed with full knowledge and understanding that UPS will, pardon me, USPS, will take measures to protect the aforementioned information against unauthorized disclosure to any parties not having a legitimate need for it in the discharge of official business to the United States or its agencies or instrumentalities. That's an assurance extended to the Well, I can go up to the earlier clause. Other information which may be relevant and necessary to determine fitness and suitability to perform services under contract with the U.S. Postal Isn't the FedEx an agent, again, in an association working with the Postal Service? I think you still have the same problem. Respectfully, Your Honor, I think not. And the reason is Any person, corporation, agency, or association, you've consented to all of those receiving the information. Well, the authorization is to release information to any duly authorized official of the It goes on to authorize, it goes on to assert that the USPS will take measures to ensure that the information is not further disseminated. But the only authorization for the release of information, respectfully, Your Honor, I think it's very unambiguous, is to the USPS. And these days, with HIPAA and the many statutes which authorize, pardon me, the many statutes which provide confidentiality and create privileges against wrongful disclosure, you know, information is not released by implication. It's released by explicit authorization. And the explicit authorization here is for the provision of information or records to any duly authorized official of the USPS. Do you want to save the rest for your rebuttal? I do indeed. Thank you, Your Honor. Thank you. Ms. Winheeler? Good afternoon, Your Honors. May it please the Court? My name is Michelle Winheeler, and I will be arguing on behalf of the Postal Service today. We're here today because Mr. Regan was denied a security clearance that he can't get. His actual complaint is not about the fact that we denied him that clearance, but that we told two of our Postal Service contractors, his employers, who are responsible for getting that clearance for him, why we denied him the access. But the simple matter is that he authorized us to tell them. Look, if we were going the same place, if you don't agree with the AJ's reading of the waiver, where does that leave you? There's a couple of things, Your Honor. One is that the AJ was specifically relying on Paragraph 2 of the release as the evidence of the waiver. We believe that the release itself has to be read as a whole, including Paragraph 3, which also releases the Postal Service from liability for the consequences of denying Mr. Regan a security clearance. Here, because there's a management instruction that's a regulation of the Postal Service that we are required to follow, and that regulation says that the Postal Service has to tell the suppliers why the clearance was denied, he was also releasing, Mr. Regan was also releasing the Postal Service as a waiver under that provision. So there are additional aspects of the release itself, other than what the AJ himself relied upon, that would further support that decision. And I would submit that it's the same thing as this Court did in Posey in affirming the decision by the Court. Is your question more specifically if you find no waiver? Correct. If you find no waiver, and the remedy at that point, then, would be to send this back to the Board for determination as to whether the breach that they found was material. And as a number of the questions that you asked Mr. Coffey showed, he has not proven that there was any damage to him as a result of the alleged breach here. He actually admitted that. Well, he would need to prove that the damage came from the act itself that was alleged to be the breach. Here, the alleged breach is not that we denied him the access, but that we told FedEx why we denied the access. He did not prove that it was the aspect of the letter saying why we denied access that caused FedEx to fire him, as opposed to us just denying him access in the first place. And in fact, if you... But if the termination, his termination, was due to the breach of the settlement, the failure of the government to protect the information that was given at that point in time, isn't that really a causal relationship? Are you talking about paragraph 4, I'm sorry, 5 or 6? Paragraph 6. In paragraph 6, it was that we were not supposed to disparage him. And here, he has still not proven, and did not prove, and there was no finding by the Board below, that it was the disparagement that caused him to be fired by FedEx. So you're talking about damages, though. You're talking about relief. It wasn't assumed under the scenario. We don't accept relief. So there's been a violation of the agreement, and the question remains whether or not he's entitled to any damages. What damages he's entitled to, correct? Well, not just damages, Your Honor, but also whether it was a material breach in the first place. So what is your view, just to continue, you started to say that it would go back, it would vacate and remand. Are you saying that he's waived his right to reopen the record? I mean, assuming there's no evidence. I mean, I think that's what the other side said. There's no evidence on the record now to determine whether or not he was fired for not having the security claims or fired for being disparaged. Is he precluded now, is the AJ required to reopen the record to allow that evidence to come in, or are we done? Because there's, on this record, there's no showing that that's a criminal, that there's a material breach. Well, first, I would submit that there were arguments made about this to the Board, although the Board made no findings on it. So Mr. Rubin previously was not able to come up with and to not present evidence that there was actually a causation here. And, in fact, there was other evidence in the record put forth by the Postal Service, or, in fact, put forth by Mr. Rubin and emphasized by the Postal Service. The Federal Express merely suspended him and then told him they would fire him if he couldn't get a decision on access to the mails reversed, even though they were aware of our statement that he had been investigated for messing. So the only evidence that is on the record suggests that it was the denial of access and not the sharing of the reason why it caused him to be terminated. So I would say that the Board would be able to do it just on that same record. But if the Board felt that there was not enough evidence, that would be the next step for it to decide, to open and decide. What about the other side's argument on his response to the remedy, on getting a declaratory act of judgment and then going to a court and claiming he's able to receive a breach of contract? What's the government's response to that? To be honest, that's the first I heard that that was the remedy he was seeking, so I've been trying to think of my answer to that. I agree that under the case law that exists, he would need to independently prove that breach of contract. It wouldn't hold for him that he automatically can get damages in a separate action because there was a fine and a breach here. In fact, I don't necessarily agree that the Board found a breach. The Board found that we disparaged him and then specifically stopped short of saying that that was a breach of Paragraph 6 of the agreement because there was a waiver. It never actually made that finding. Was there a violation of Paragraph 5 based on the retention of the records in the file? No, Your Honor, there was not. Your answer with King, the 1997 case that required the cleaning of personnel files on agreement, broadly required that. The King case is distinguishable because in the King case, the petitioner had argued and bargained for a clean record in terms of all personnel files, and the court merely found that that went beyond the one document or one file that the agency called an official personnel file and went on to other types of personnel files as well. Here, we're not talking about a separate personnel file but a file of a law enforcement agency, an inspection service. Moreover, Mr. Riefing specifically bargained only to have his OPF cleared. He was a postmaster for us. He was represented in the settlement proceedings. He knew that the OPF was only the OPF. He was aware that there was an inspection service file on him and that that would contain evidence of reports on him, and yet he only bargained to have the OPF cleared and only of the discipline itself, not the inspection service report. So, King is distinguishable on those grounds. Ms. Loftin, you mentioned that the inspection service was registered as a law enforcement agency. Yes. Is it independent, an agency independent? No, it is. It's an agency that also reports up to postal service management, but it acts as a law enforcement, not as a part that maintains personnel files. Its job is to maintain the security of the mail, not to keep personnel files or tabs on the employees. If there's a reason as— It's different than an inspector general's office, which is different. Yes. It's different. We have two inspection services. One is the inspection service, and one is the office of the inspector general, who is responsible for checking to make sure everything's done properly. This is more about the security of the mail, not about personnel. I would be happy to go on and reiterate the points that are in my brief, Your Honors, but I would be much more interested in answering any other questions that you might have. Do we have none? Thank you. Thank you. If you have a little more time to make— Thank you, Your Honor. Being respectful of Judge Geraghty's role here, I would, I think, have to suggest to the court that a proper directive on remand where this court is at a dispose would be that he was mistaken as a matter of law in interpreting this document as a waiver, and that he is to conduct further proceedings if the court is for that directive. I don't know how Judge Geraghty would have ruled on the issue of materiality. Certainly, I know what the position would be, that the disparagement provision and the nondisclosure provisions were, you know, two of the three items of consideration offered to Mr. Riefing in the settlement agreement. Their complete failure, therefore, is, to speak broadly, a two-thirds failure of the three-pronged consideration offered him. With regard to the failure to purge the USPS file, I would direct the court's attention to page 0077 of the appendix, where I list, for Judge Geraghty's benefit, the appending items that were not purged from Mr. Riefing's file, and I think those items clearly were violates of the agreement. If there are no further questions, I thank you for your concern. Thank you, Mr. Cuff.